# IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF NORTH CAROLINA
### CHARLOTTE DIVISION
### CASE NO.: 3:25-CR-150-MOC-SCR

| |
|---|
| **UNITED STATES OF AMERICA** |
| **v.** |
| **PHILLIP DOUGLASS** |

## MOTION TO SUPRESS

NOW COMES defendant Phillip Douglass, through counsel, and moves the Court to Suppress statements of the Defendant obtained in violation of his Fifth Amendment invocation for Counsel and all evidence that stems from this violation. In support of this motion, the defense submits the following Motion to Suppress and Memorandum in Support of this Motion:

### I.    Relevant Facts

1. On March 28, 2025, Mr. Douglass, an employee of the Department of Homeland Security was summoned by his supervisor to come to the Investigations Headquarters located at 3700 Arco Corporate Drive.

2. When he arrived in the parking lot, he was approached by special agents from the North Carolina State Bureau of Investigation.

3. Mr. Douglass was escorted to a conference room on the 3rd floor of the building by agents.

1

4. Once in the conference room, Mr. Douglass was informed that his supervisor, "Maria" had arranged this. However, S.B.I. Agent Kubinsky informed him, "You are free to leave at any point. You're not under arrest or anything like that. You don't have to answer any questions, but like I said, we have an investigation that we're doing and we just have to ask you some questions, try and get to the bottom of it."[1]

5. As agents continued to ask Mr. Douglass questions he stated, "I don't mind answering questions. If I wanted to have an attorney, how would we do that?"

6. Mr. Douglass was informed by agents that they could not help him get an attorney.

7. State Bureau of Investigation agents continued to explain what they were investigating and informed Mr. Douglass that this investigation involved allegations of uploading child pornography.

8. Upon learning of the nature of this investigation, Mr. Douglass stated, "I want to help and talk. I think I need to have an attorney, it sounds serious. I think I'd like to have an attorney. I'll talk to one."

9. Immediately, an agent responded, "Sure. Okay. That's no problem. So at this time John is going to serve a search warrant."

10. Agent Kubinsky presented Mr. Douglass with a warrant for his iPhone and a warrant to search his home. An agent also told him they needed his keys.

---

[1] An audio recording of this interrogation has been produced to the Defendant in discovery.

2

11. Mr. Douglass provided them with his cellphone and he provided his keys.

12. Law enforcement continued questioning Mr. Douglass including asking him for the passcode to his garage and the passcode to his phone.

13. Law enforcement utilized the passcode Mr. Douglass provided for his iPhone and garage to search Mr. Douglass' phone and home, retrieving evidence likely to be used in the prosecution of Mr. Douglass.

## II.    Summary of Argument

The defendant's verbal statement providing his phone password and other statements to law enforcement following the invocation of his desire for counsel once he no longer felt free to leave should be suppressed as it was obtained in violation of the Fourth, Fifth, and Fourteenth Amendment of the United States Constitution.

Mr. Douglass was questioned by law enforcement and upon learning of the nature of the investigation, said that he wanted a lawyer. Immediately after invoking counsel, agents served a warrant on Mr. Douglass to seize his phone. They also requested his keys. Law enforcement did not mirandize Mr. Douglass, yet continued to ask him questions obtaining, among other things, the passcode for Mr. Douglass' phone and the passcode for his home. Suppression turns on three sequential questions: (1) whether the defendant was in custody when the password was requested; (2) whether the defendant's earlier statement — "I think I would like to speak with a lawyer before answering any questions" — constituted an unambiguous invocation of his Miranda right to counsel; and (3) whether verbally

3

stating a phone or lock passcode is a "testimonial" communication protected by the Fifth Amendment. The answer to all three questions is yes. The invocation of counsel was valid, therefore, Edwards/Minnick rule barred further police-initiated interrogation and the verbal password statements, and all statements made following invocation and while Mr. Douglass perceived he was no longer free to go should be suppressed.

### III.    Custodial Interrogation

The Fifth Amendment privilege against self-incrimination, as construed in *Miranda v. Arizona*, 384 U.S. 436 (1966), protects individuals subject to custodial interrogation. Miranda warnings are required when a suspect is both (a) in custody and (b) subject to interrogation. The Supreme Court defined "custodial interrogation" as questioning initiated by law enforcement after a person has been taken into custody or otherwise deprived of freedom of action in any significant way  *Miranda v. Arizona*, 384 U.S. 436 (1966).

The custody determination is objective: courts examine the totality of the circumstances and ask whether a reasonable person would have felt at liberty to terminate the interrogation and leave  *J.D.B. v. North Carolina*, 564 U.S. 261 (2011). The freedom-of-movement test identifies a necessary but not sufficient condition for Miranda custody — lack of freedom to leave alone is not enough; the environment must also present the inherently coercive pressures Miranda was designed to address *Howes v. Fields,* 565 U.S. 499 (2012).

Here, the encounter had two distinct phases. During the first phase, the defendant was told he was free to go and questioned voluntarily. This was non-custodial. However, when law enforcement informed the defendant that they had a warrant to seize his phone and he stated that he no longer felt free to go, the character of the encounter changed materially. Under the Fourth Circuit's analysis in *U.S. v. Hashime*, 734 F.3d 278 (2013), advisements that a person is free to leave are not talismanic and do not negate custody when the totality of the circumstances demonstrates otherwise. The *Hashime* court found custody despite law enforcement's statements that the defendant was not under arrest, because the broader environment — execution of a search warrant, isolation, restriction of movement — made clear that a reasonable person would not have felt free to terminate the encounter. Similarly, here, the announcement of an executed warrant, conveying lawful governmental authority to seize the defendant's property, would lead a reasonable person to believe they were no longer free to leave. Custody therefore attached when the warrant was announced.

### IV.   Invocation of Counsel

Once custody attached, the defendant's earlier statement — " I think I need to have an attorney, it sounds serious. I think I'd like to have an attorney " — must be assessed as a potential invocation of the Miranda right to counsel. Under the Supreme Court's framework in *Davis v. U.S.*, 512 U.S. 452 (1994), a suspect must invoke the right to counsel unambiguously. In *Berghuis v. Thompkins*, 560 U.S. 370 (2010), the Court extended this unambiguous invocation requirement to the right to

remain silent. If a suspect makes an ambiguous or equivocal reference to counsel, law enforcement need not cease questioning. The standard is objective: "he must articulate his desire to have counsel present sufficiently clearly that a reasonable police officer in the circumstances would understand the statement to be a request for an attorney" *Davis v. U.S.*, 512 U.S. 452 (1994).

The Fourth Circuit has held multiple suspect statements to be insufficiently clear under this standard. In *Burket v. Angelone*, 208 F.3d 172 (2000), the court held that "I think I need a lawyer" was ambiguous, directly analogizing it to the Supreme Court's finding in Davis that "Maybe I should talk to a lawyer" was ambiguous *Davis v. U.S.*, 512 U.S. 452 (1994). Similarly, an unpublished Fourth Circuit decision in *U.S. v. Williams*, 446 Fed.Appx. 587 (2011) held that "I don't think I want to say anything more until I talk to a lawyer" did not constitute a clear, unequivocal invocation.

However, the defendant's statement has a feature that distinguishes it from the statements found ambiguous in *Burket* and *Williams*: it expressly tethers the request to answering questions — stating that he would like to speak with a lawyer before answering any questions. This language conveys not merely uncertainty about wanting a lawyer, but a conditional condition on cooperation: the defendant is saying he will speak only after consulting an attorney. A reasonable officer could understand this statement as a direct indication that the defendant did not wish to answer questions without counsel present. Law enforcement did, in fact, understand this

invocation stating, "Sure. Okay. That's no problem. So at this time John is going to serve a search warrant."

The district court in *U.S. v. Hunter,* 63 F.Supp.3d 614 (E.D.V.A., 2014) found an unequivocal invocation where the defendant directed police to "talk to his" court-appointed lawyer, reasoning that unlike statements expressing uncertainty ("I think I need a lawyer"), the defendant in that case did not question whether he wanted a lawyer but directed police to one. The defendant's conditioning of all further questioning on having counsel present may similarly be read as an expression of intent rather than mere deliberation.

Critically, the Supreme Court held in *Smith v. Illinois*, 469 U.S. 91 (1984) that the two inquiries of invocation and waiver are entirely distinct, and that "an accused's post-request responses to further interrogation may not be used to cast doubt on clarity of his initial request for counsel." This is significant because the defendant in this case answered questions after his statement about counsel. Under *Smith v. Illinois*, those subsequent answers cannot retroactively render the initial request ambiguous.

Mr. Douglass clearly invoked his desire to speak with counsel before proceeding with further questioning. Law enforcement acknowledged this and proceeded to serve him with a warrant, take his phone, and request his keys, and then began questioning him again.

### V.    Prohibition on Further Interrogation

If the defendant's invocation is deemed valid, the analysis proceeds under the bright-line rule of *Edwards v. Arizona*, 451 U.S. 477 (1981). The Court held that "an accused, such as *Edwards*, having expressed his desire to deal with the police only through counsel, is not subject to further interrogation by the authorities until counsel has been made available to him, unless the accused himself initiates further communication, exchanges, or conversations with the police" *Edwards v. Arizona*, 451 U.S. 477 (1981). This rule is prophylactic: once the right to counsel is invoked, a valid waiver cannot be established by showing only that the defendant responded to police-initiated interrogation after being re-advised of his rights *Edwards v. Arizona*, 451 U.S. 477 (1981).

*Minnick v. Mississippi*, 498 U.S. 146 (1990) strengthened the Edwards rule by holding that even if a suspect meets with counsel between interrogation sessions, law enforcement may not reinitiate interrogation without counsel physically present. The protection continues until counsel is actually present during the interrogation. *Arizona v. Roberson*, 486 U.S. 675 (1988) extended the Edwards rule to cover police-initiated interrogation on unrelated matters. *Maryland v. Shatzer*, 559 U.S. 98 (2010) established that a 14-day break in custody can allow re-interrogation, but no such break occurred in this case.

Here, law enforcement continued asking questions after the defendant stated he would like a lawyer before answering — in apparent disregard of the invocation. Law enforcement then asked for the defendant's phone password, which constituted express questioning under *Rhode Island v. Innis*, 446 U.S. 291 (1980). Interrogation

8

under Innis includes "express questioning" and its "functional equivalent" — any words or actions that the police should know are reasonably likely to elicit an incriminating response. *Id.* Asking directly for a phone password is unambiguously express questioning. As the District of Maryland held in *U.S. v. Walker*, 624 F.Supp. 103 (1985), post-invocation police-initiated questioning that elicits an incriminating response, even when indirect, constitutes the functional equivalent of interrogation requiring suppression.

### VI. Compelling Mr. Douglass' Password was Testimonial

Even if Miranda and Edwards apply, suppression of the password statement under the Fifth Amendment requires that the statement be testimonial, incriminating, and compelled    *U.S. v. Sweets*, 526 F.3d 122 (2007). The Fifth Amendment does not protect compelled physical or non-testimonial acts, only compelled testimonial communications.

The Supreme Court in *Fisher v. U.S.*, 425 U.S. 391 (1976) established that the Fifth Amendment "applies only when the accused is compelled to make a testimonial communication that is incriminating" and does not protect against the compelled production of all incriminating evidence. In *U.S. v. Hubbell,* 530 U.S. 27 (2000), the Court distinguished between surrendering a key to a strongbox — a non-communicative act — and "telling an inquisitor the combination to a wall safe" — a testimonial communication, because it discloses the contents of one's mind. *Doe v. U.S.*, 487 U.S. 201 (1988) confirmed that a communication is testimonial when it

9

"must itself, explicitly or implicitly, relate a factual assertion or disclose information," including the expression of the contents of an individual's mind.

The Fourth Circuit applied this framework directly to phone passcodes in *United States v. Oloyede*, 933 F.3d 302 (2019). There, the court held that a defendant who physically entered her passcode out of the agent's view — without verbally disclosing it — did not make a testimonial communication to the agent, because she "simply used the unexpressed contents of her mind to type in the passcode herself" *United States v. Oloyede,* 933 F.3d 302 (2019). The court explicitly noted that the result would be different in a case "in which she gave the passcode to the agent for the agent to enter" — the Hubbell "combination to a wall safe" scenario. *United States v. Oloyede*, 933 F.3d 302 (2019).

In this case, the defendant verbally stated his password to law enforcement. Unlike the defendant in *Oloyede* who physically typed the code without expressing it, this defendant communicated the specific content of his memory — the actual passcode — directly to officers. This is precisely the scenario the Fourth Circuit identified in *Oloyede* as constituting testimonial communication: it is the equivalent of telling an interrogator the combination to a wall safe. The verbal disclosure discloses information, relates a factual assertion (that the stated code is the true password to the phone), and expresses the contents of the defendant's mind under the test established in *Doe v. United States*. Under *Oloyede*, *Hubbell*, and *Fisher*, verbally stating a phone password is a testimonial communication for Fifth Amendment purposes.

The verbal password statement was also compelled, in the practical sense: law enforcement asked for it while the defendant was in custody and following the announcement of a warrant — circumstances in which a reasonable person would not feel free to decline. And the statement is incriminating insofar as the password enables access to the phone, which is the subject of the investigation. All three prongs — testimonial, compelled, and incriminating — are satisfied.

## VII. Evidence obtained in the search of the iPhone and residence is barred by the exclusionary rule.

The exclusionary rule generally requires suppression of evidence tainted by violations of the Fifth and Sixth Amendments. *Nix v. Williams*, 467 U.S. 431, 441-42, 104 S.Ct. 2501, 81 L.Ed.2d 377 (1984). The Supreme Court has explained that the exclusionary rule is "needed to deter police from violations of constitutional and statutory protections" that might, otherwise, put the prosecution "in a better position than it would have been in if no illegality had transpired." *Id*. at 442-43, 104 S.Ct. 2501.

The Supreme Court has not extended the exclusionary rule to voluntary statements made without proper Miranda warnings, because the "mere failure to give Miranda warnings does not, by itself, violate a suspect's constitutional rights or even the Miranda rule" and so does not justify such a broad suppression rule. *United States v. Patane*, 542 U.S. 630, 641, 124 S.Ct. 2620, 159 L.Ed.2d 667 (2004). Voluntary statements obtained in violation of Miranda "can be used to impeach a defendant's

11

testimony at trial" and "nontestimonial fruit of a voluntary statement" may be introduced at trial. *Id*. at 639, 643, 124 S.Ct. 2620. On the other hand, involuntary statements are subject to the exclusionary rule and evidence derived from those statements cannot be used in a criminal case against that defendant. *Id*. at 640, 124 S.Ct. 2620.

If a suspect continues to be interrogated after an unequivocal request to speak with an attorney, his statements are presumed involuntary and are therefore inadmissible at trial, even where the suspect executes a waiver that would render his statements voluntary under traditional standards. *Michigan v. Harvey*, 494 U.S. 344, 350, 110 S.Ct. 1176, 108 L.Ed.2d 293 (1990); see also *Maryland v. Shatzer*, 559 U.S. 98, 104, 130 S.Ct. 1213, 175 L.Ed.2d 1045 (2010) ("[I]f the suspect states that he wants an attorney, the interrogation must cease until an attorney is present.").

While the facts in this case do give rise to a Miranda violation, that is not the basis for the exclusion of evidence. Mr. Douglass informed agents he did not wish to continue answering questions without counsel. This was acknowledged by law enforcement who then detained Mr. Douglass by executing a search warrant on him, taking his phone, and requesting his keys. He did not believe he was free to go. Law enforcement disregarded his request not to answer questions without counsel and continued to question him. The statements that followed were involuntary and subject to the exclusionary rule.

### VIII.  An Evidentiary Hearing is Appropriate

The case presents important questions of constitutional dimension. And, to the extent the government argues the evidence should not be suppressed, there are "material facts that affect the resolution of" this motion, and the "appropriate way to resolve the conflict is by holding an evidentiary hearing." *United States v. Taylor*, 13 F.3d 786, 789 (4th Cir. 1994).

## IX.   Conclusion

For the foregoing reasons the Defendant moves that the Court suppress statements made by Mr. Douglass obtained in violation of his Fifth Amendment invocation for Counsel and all evidence that stems from this violation. The defense requests an evidentiary hearing in this matter.

Dated:  May 11, 2026.

Respectfully submitted,

/s/ C. Melissa Owen

TIN FULTON WALKER & OWEN PLLC
301 East Park Avenue
Charlotte, NC  28203
T: (704) 338-1220
F: (704) 338-1312
cmowen@tinfulton.com
*Counsel for Defendant*
